HIRAM P. HARRIMAN & another *vs.* THEODORE
H. TYNDALE, administrator.

Suffolk.    November 13, 1903. — January 6, 1904.

Present: KNOWLTON, C. J., MORTON, LATHROP, BARKER, & BRALEY, JJ.

*Equity Jurisdiction*, Specific Performance, Charge on proceeds of land.  *Executor.*

The right of a vendee to enforce specifically a contract for the sale of land, by com-
pelling a conveyance, is not affected by the fact that the vendor's title was im-
perfect when the contract was made, if later it became adequate.

It is not within the power of an administrator *de bonis non* with the will annexed of
an insolvent estate, to stipulate that an arbitrator under R. L. c. 194, may award
damages on a claim against the estate for the conveyance of certain real estate
as a preferred claim under R. L. c. 142, § 30, but if the real estate in question has
been turned into money by an agreement of the parties, with a stipulation that
the claim shall be paid from the fund, the fund properly is chargeable in equity
with the damages which are allowed.

SUBMISSION TO ARBITRATION under R. L. c. 194, signed by
Hiram P. Harriman, Stephen Jennings, and Theodore H. Tyn-
dale, administrator *de bonis non* with the will annexed of the
estate of Micah Dyer, Jr., dated October 25, 1902.  Hosea M.
Knowlton, Esquire, was named in the submission as arbitrator.
After his death the parties by agreement in writing stipulated
that F. Rockwood Hall, Esquire, should be arbitrator in place
of Mr. Knowlton.  The arbitrator found that the claim of the
plaintiff Harriman took precedence of that of the plaintiff Jen-
nings, and made an award that the plaintiff Harriman be paid
from the estate of Micah Dyer, Jr. by the defendant Tyndale,
administrator, as a preferred claim, the sum of $16,353.64.

In the Superior Court the case was heard by *Hardy*, J. on
a motion of the plaintiff Harriman that judgment be entered in
his favor in accordance with the arbitrator's report.  The judge
overruled objections of the defendant to the arbitrator's report,
called exceptions, and confirmed the report and award.  He re-
fused the defendant's requests for rulings, and allowed the motion
for judgment.  The defendant alleged exceptions which the judge
allowed as follows:

" In the above case objection was made to my allowance of the

exceptions on the ground that only by an appeal the defendant was entitled to present his claim to the Supreme Judicial Court, and that the court of last resort would have no right to consider the questions the defendant desires to raise on a bill of exceptions, but I overrule such objection of the plaintiffs, and have allowed the exceptions, notwithstanding such objections."

The defendant appealed from " the finding of the judge confirming the report of the arbitrator."

The contract for the sale of real estate which the plaintiffs sought to enforce was as follows:

"Know all men, that I, Micah Dyer, jr., of Boston, in the county of Suffolk and Commonwealth of Massachusetts, in consideration of one dollar and other valuable considerations paid by Alfred A. Marcus, of said Boston, the receipt whereof is hereby acknowledged, do hereby agree to convey, or cause to be conveyed, to said Alfred A. Marcus, his heirs or assigns, estate number ninety-four (94) Essex street, in said Boston, together with whatever may be due from the city of Boston, for damages occasioned by the taking of a portion of said estate heretofore, and which suit is now pending against city, upon the payment to me by the said Alfred A. Marcus, his heirs or assigns, of the sum of forty-five thousand dollars ($45,000) and the interest on two mortgages, one of $18,000 and one of $12,000, said interest due for a time not exceeding five months, also the taxes of the year 1895; upon the condition that one thousand dollars ($1000) of said amount shall be paid on or before March 12, 1896, at which payment the payment of the balance may be extended to April 13, 1896, when, if $4000, four thousand dollars, more is paid, the payment of the balance may be extended to June 12, 1896; the said Marcus, his heirs or assigns, to pay all expenses of the law suit against the city of Boston for said damages. The deed of said premises to be given to be dated the twelfth day of March, eighteen hundred and ninety-six. Witness my hand and seal this fifth day of March, eighteen hundred and ninety-six. Micah Dyer, jr."

"In consideration of one dollar and other valuable considerations to me paid, I do hereby assign and transfer all my rights under the foregoing agreement to                    Witness my hand and seal this          day of March, A. D. 1896. Alfred A. Marcus."

The following facts, among others, were found by the arbitrator :

Micah Dyer, Jr. (called in this statement "Micah"), died on November 24, 1897, testate. His son, Walter, was appointed the executor of his will, but subsequently was removed, and Mr. Tyndale, the defendant, was appointed administrator *de bonis non*, with the will annexed, of the testate's estate, which was represented and declared insolvent.

On June 8, 1893, one Fitzgerald, called in the record a "straw man" for Alfred A. Marcus and his son Simeon, acquired the title to No. 94 Essex Street, Boston, subject to two mortgages, — one of $18,000, then held by the Warren Institution for Savings, and the other of $12,000, held by Reuben E. Demmon; and, on the same day, Fitzgerald executed a mortgage for $30,000 on the property to Julia K. Dyer, wife of Micah, as security for a note of A. A. Marcus and Son for $17,000, then held by Micah. This mortgage was Micah's property, placed in his wife's name from "motives of prudence or convenience," and, on February 25, 1895, was assigned by her to one Ruggles, and by Ruggles to Micah, the assignment, however, not being recorded until February 20, 1897.

On March 5, 1896, and while Micah held the unrecorded assignment of the $30,000 mortgage, he signed and delivered to Marcus the contract above quoted, by which he agreed to convey, or cause to be conveyed, to Marcus, his heirs or assigns, 94 Essex Street, upon payment of $45,000 and certain additional sums, on condition that the payments were made at the times and as therein stated. Marcus made the first payment of $1,000 on March 12, and immediately assigned the agreement to his counsel, Mr. Harriman, who had advanced the $1,000. Julia K. Dyer, wife of Micah, was adjudged an insolvent debtor on February 25, 1895, and Mr. Harriman was appointed assignee of her insolvent estate. Soon after the delivery of the agreement, Micah attempted to get the title to No. 94 Essex Street by foreclosure of the $30,000 mortgage; but Mr. Harriman, claiming the mortgage as assignee of Julia's insolvent estate, brought a bill in equity, upon which he obtained an injunction restraining the foreclosure sale. This was on April 2, 1896, eleven days before the payment of $4,000 was required to be made.

On April 13, Marcus, accompanied by Harriman, called at Micah's office and tendered the $4,000. Micah refused to accept it, because, as he said, and Marcus and Harriman believed, the injunction prevented Micah from carrying out the agreement. Micah was then willing to perform, and promised to do so when the injunction was dissolved. It was not dissolved until February 2, 1897. Marcus then did not have actual knowledge of the dissolution of the injunction, but Harriman did. Mr. Harriman was counsel for Marcus in this matter before the agreement was signed and until late in the month of March, 1897.

On February 21, 1897, Micah assigned this mortgage to Charles R. Batt in trust (1) to secure the National Security Bank for advances in Julia's composition in insolvency, and (2) to convey to his son Walter. Batt foreclosed the mortgage on March 18, 1897, and caused the premises to be bid in, subject to the mortgages of $18,000 and $12,000. Marcus knew of the foreclosure sale, and to enable Micah to collect damages from the city of Boston occasioned by the widening of Essex Street, delivered to Micah, or there was delivered with his knowledge and consent to Micah, a deed of the premises, in which no grantee's name appeared. This deed was never recorded, nor did it appear that any name was ever inserted as grantee. Batt conveyed this property to Walter on July 2, 1897, in accordance with the trust deed, and Walter took the title with full knowledge of the agreement between his father and Marcus. Soon after his appointment Tyndale brought suit against Walter to recover several parcels of land, including 94 Essex Street, on the ground that they were conveyed by Micah when insolvent without valuable consideration and with the intent to hinder, delay and defraud creditors. This suit was referred to a master who sustained Tyndale's contention in part and found and reported that Walter held No. 94 Essex Street and certain other lands upon a secret trust, and that he ought to convey them to Tyndale.

While this suit was pending, and after the master's report was filed, but before a hearing upon it, Tyndale arranged a settlement with Walter, by the terms of which he was to receive a certain sum of money and to release Walter from all claims of the estate. Having arranged this settlement, Tyndale petitioned

the Probate Court for leave to compromise, and a citation issued upon his petition and was duly served. Harriman entered his appearance to oppose the petition, as attorney for Jennings, but withdrew his appearance on October 28, 1902, when a decree authorizing the compromise was entered. After the master's report was filed, and before the compromise was effected, Jennings brought a bill in the Superior Court against Tyndale, Walter Dyer, and Walter's wife, Martha, to enforce specifically the contract above quoted, and in this bill offered to pay the full consideration due, and otherwise to perform.

The following stipulation was executed by the parties to the submission : " In the matter of the claims or demands submitted to Hosea M. Knowlton, Esquire, between the above-named parties, it is agreed and stipulated that the discharge and dismissal of the suit pending between Alfred A. Marcus and Walter R. Dyer, in relation to the property No. 94 Essex street, and the dismissal or other entry in the bills in equity pending between said Theodore H. Tyndale, as administrator as aforesaid, and Walter R. Dyer *et als.*, in the Superior Court for the county of Suffolk, shall not in any way affect the rights of the parties to said submission to arbitration before mentioned, pending before Hosea M. Knowlton, the matters submitted before said Hosea M. Knowlton to be determined by him as though none of the above-mentioned suits or actions had been terminated or dismissed subsequent to the date of said submission."

*W. B. French*, (*E. L. Curtiss* with him,) for the defendant.

*H. P. Harriman & H. E. Perkins*, for the plaintiffs.

KNOWLTON, C. J. The parties submitted the demands of the plaintiffs against the defendant under a writing which the plaintiffs contended gave them a right to specific performance of a contract for the sale of real estate, and all other demands of either party against the other, to arbitration under the R. L. c. 194. The arbitrator made a report in favor of the plaintiffs and reserved certain questions of law for the court. Exceptions also were taken in the Superior Court. It is necessary now to consider only the questions argued by the defendant at the hearing in this court.

The contract relied on was for the sale of real estate, and it entitled Marcus, with whom it was made, to a good title to the

property if he complied with the conditions as to payment. *Mansfield* v. *Hodgdon*, 147 Mass. 304.    *O'Brien* v. *Boland*, 166 Mass. 481.    The plaintiffs have succeeded to all rights which Marcus had under this contract.    The first payment of $1,000 was made by Marcus under the agreement, and the second payment of $4,000 was tendered when it became due.    The refusal of the defendant's testator to receive it, with his statement of his willingness to accept the money and carry out the agreement on the removal of the injunction, and his promise to Marcus to let him know as soon as the injunction was dissolved and he was free to make the conveyance, absolved Marcus from the duty of making or tendering payments until he should receive further information from the testator.    The subsequent knowledge of Harriman that the injunction had been dissolved, obtained while he was acting officially in an independent capacity as the assignee in insolvency of Julia K. Dyer, did not affect the rights of Marcus in this particular.    As the plaintiff Jennings has a conveyance of all Marcus's rights from the trustee in bankruptcy of Marcus's estate, his claim here is as good as Marcus would have had if he had not become a bankrupt.    The previous conveyance of the claim by Marcus to Mr. Harriman, to be held as collateral security for a debt, leaves Marcus's representative with a right to have it treated in this proceeding as if no such conveyance had been made, except that the proceeds of it are applicable in the first instance to the payment of Mr. Harriman's debt, for whose security it is held.    The fact that a deed for the equity of redemption was given by Fitzgerald for the special purpose of promoting a settlement of the claim for damages against the city of Boston, which deed was never recorded, did not operate as a waiver and discharge of Marcus's rights under the contract.    It is at most a part of the evidence in the case.

We come now to the most important question before us, namely : Whether the arbitrator might find that the plaintiffs were entitled to specific performance as against the defendant. In considering this question we are to treat the case as if the defendant had not settled his suit against Walter R. Dyer, the holder of the title; for there is a stipulation of the parties that the matters submitted are to be determined by the arbitrator as if " none of the above-mentioned suits or actions (including this

suit) had been terminated or dismissed subsequent to the date of said submission." The arbitrator has found facts which show that if this suit had not been settled by a payment of money, the defendant would have been entitled to a conveyance of the real estate from Walter R. Dyer, who held it by a title fraudulent as against the testator's creditors, with full knowledge of the facts on which the present plaintiffs' claims are founded. A master's report had been made in favor of the plaintiffs. If the suit had been prosecuted to a final decree and a conveyance had been made under the decree, the defendant would have been in a position which would have enabled him specifically to perform the contract relied on by these plaintiffs. We are to decide the question as if the defendant's rights had not been changed by a settlement of the suit to obtain the property from Walter R. Dyer and by a substitution of money for real estate which this defendant otherwise would have obtained. Previously to his death the defendant's testator had controlled the title, and had caused it to be conveyed to his son Walter R. Dyer to be held for his benefit. The defendant, representing the testator and his creditors, could control it after his appointment. It is immaterial that the testator's title was imperfect when the contract was made; if it became adequate before the time for the decision in this case. It is a vendee who is seeking performance, and not a vendor proceeding against a vendee who has declined to accept the property because the title was not good. The objection, therefore, that the defendant had not such a title as was necessary to warrant a decree for specific performance, cannot prevail. *Dresel* v. *Jordan*, 104 Mass. 407, 414, 415 and cases cited. *Richmond* v. *Gray*, 3 Allen, 25. *Barnard* v. *Lee,* 97 Mass. 92.

In the agreement for arbitration the parties stipulated that if the arbitrator awards damages, judgment on the award shall have the same effect as is provided by R. L. c. 142, § 30, in the case of a judgment against the insolvent estate of a deceased person. The arbitrator has accordingly awarded that Mr. Harriman shall be paid from the estate of Micah Dyer the sum of $16,353.64 as a preferred claim. The estate was insolvent, and it was not within the power of the administrator *de bonis non* with the will annexed to stipulate, as between different classes of creditors, that a claim of this kind should be allowed as a pre-

ferred claim under the R. L. c. 142, § 30. It was a claim for a conveyance of real estate, and if the real estate was turned into money by an agreement of the parties, with a stipulation that this claim should stand against the fund, to be paid from it in money, the fund is properly chargeable in equity with the damages which are allowed. R. L. c. 148, § 1. *Root* v. *Blake*, 14 Pick. 271. *Boyd* v. *Soule*, 8 Gray, 554. Perhaps it is to be assumed that, in the settlement of the suit against Walter R. Dyer, the defendant received, on account of the real estate, a sum as large as the amount here found in favor of the plaintiffs. If so there is no question that the fund so obtained is chargeable with the payment of the full amount of this award, and in this sense the award may be called a preferred claim. If there is a deficiency in this fund, what rights these plaintiffs will have to other property of the estate, as against other creditors, preferred or unpreferred, cannot be determined in this case.

*Judgment affirmed; exceptions overruled.*